## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

RUBEN GARCIA, JR. and a class
of property buyers similarly situated,
    Plaintiff,

v.

TITLE CHECK, LLC,
    Defendant

                                    /

Case No.: 20-cv-724

Honorable _____

**COMPLAINT**
**JURY DEMANDED**

| | |
|---|---|
| OUTSIDE LEGAL COUNSEL PLC<br>PHILIP L. ELLISON (P74117)<br>Counsel for Plaintiff<br>PO Box 107<br>Hemlock, MI 48626<br>(989) 642-0055<br>pellison@olcplc.com | MATTHEW E. GRONDA (P73693)<br>Counsel for Plaintiff<br>PO Box 70<br>St. Charles, MI 48655<br>(989) 249-0350<br>matt@matthewgronda.com |

### COMPLAINT FOR DAMAGES UNDER THE
### *RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT*
### AND FOR OTHER STATE COMMON LAW RELIEF

    NOW COMES Plaintiff RUBEN GARCIA JR, by and through counsel, and complains as follows:

### PARTIES

    1.    Plaintiff RUBEN GARCIA JR is a resident of the State of Michigan.

    2.    Defendant TITLE CHECK, LLC is a Michigan limited liability company formed under the laws of the State of Michigan, with its principal office located in Kalamazoo, Michigan.

1

## JURISDICTION

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c) as the controversy centers on a federal question under the *Racketeer Influenced and Corrupt Organizations* (RICO) Act.

4. This Court has jurisdiction over state-law claims and issued therefrom arising from the same transactions and events pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as all Defendants either reside or conduct business within the boundaries of the Western District of Michigan.

## GENERAL ALLEGATIONS

6. Under Michigan's *General Property Tax Act*, MCL 211.1 et seq., failure to pay real property taxes results in the government's seizure, sale, and retention of all sale proceeds and/or equity in said property. This now disgraced system has been bluntly called "theft" by a member of the federal bench and very recently held to be unconstitutional by the Michigan Supreme Court. *Rafaeli v Oakland County*, ____ Mich ____ (2020); *Wayside Church v. Van Buren County*, 847 F.3d 812, 823 (6th Cir. 2017) (Kethledge, J., dissenting).

7. This unconstitutional and unconscionable system came into effect through Michigan Public Act 123 of 1999.

8. Defendant Title Check, LLC was founded shortly thereafter by Martin Spaulding.

9. According to Defendant Title Check, LLC's own website, it "serves Michigan county treasurers with a variety of specialized title search, due process notice, property sale, and information services to meet the requirements of PA 123 of 1999," a law which made unconstitutional amendments to the *General Property Tax Act*. **Exhibit A.**

10. In other words, Defendant Title Check, LLC holds itself out as an expert in the administration of tax foreclosure sales. It offers to county treasurers a complete service: initial notice, title work, marketing, sale, and

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

the ultimate conveyance purportedly in compliance with now unconstitutional PA 123 of 1999.

11.  The service has proved extremely popular. Martin Spaulding founded Title Check, LLC with a total workforce of six employees. Six months later, he had 12. **Exhibit B**. Now, he has more than 40. **Exhibit B.**

12.  By its own admission, it now works for "more than 60 counties throughout the State of Michigan." **Exhibit B.** Defendant Title Check, LLC is handling nearly every aspect of the tax foreclosure sale process in well over 75% of the State of Michigan.

13.  Between its "expert" status and the ease it offers laymen county treasurers by in essence doing their job, perfect conditions existed for Defendant Title Check, LLC to fraudulently become one of the chief profiteers of the *General Property Tax Act*'s unconstitutional excesses.

## The Foreclosure Process

14.  In Michigan, real property is assessed annually to determine true cash value (TCV) as of "tax day." MCL 211.27; MCL 211.2.

15.  Local assessors issue assessment notices each February, MCL 211.24c(4), which is appealable to a local "Board of Review" and a "Michigan Tax Tribunal." MCL 211.29; 205.735a.

16.  Since 1994, Michigan has "capped" taxable value, which limits year-over-year tax increases between transfers of ownership. MCL 211.27a(3).

17.  Once taxable value is determined, that number is then multiplied by the millage rate—total rate for schools, ambulance and veterans' services, road mills, etc—to set tax liability for each specific parcel.

18.  The local county treasurer is one that applies the millage rate, with bills typically split into two levies—which everyone from Michigan knows is the "summer tax bill" and the "winter tax bill."

19.  Take 2011 as an example; the first bill was issued on or about July 1, 2011 (summer tax) and the second on or about December 1, 2011 (winter tax). MCL 211.44.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

20. Any 2011 property taxes unpaid as of March 1, 2012, become "delinquent" and turned over to the county treasurer for collection; delinquent taxes can no longer be paid to the village, township, or city treasurer. MCL 211.78a(2).

21. Each taxpayer of record is supposedly sent notice of the delinquency and risk of future foreclosure though there are many instances of problems of notice by local government officials. MCL 211.78b.

22. Keeping with the 2011 example, when that 2011 property taxes remain delinquent for another year, the property becomes "forfeited" as of March 1, 2013. MCL 211.78g.

23. This is not a relinquishment of the parcel but merely a name given at that stage of process. See *Rafaeli, LLC v. Oakland County*, __ Mich __ (2020).

24. A notice of that "forfeiture" is supposedly sent to the taxpayer by certified mail and recorded with the county register of deeds.

25. Forfeited parcels that remain unpaid are then taken to local state court in a single in rem foreclosure action filed in the county circuit court where the property is located.

26. The forfeited 2011 property taxes are listed in a circuit court petition filed by June 15, 2013. MCL 211.78h.

27. Delinquent 2011 property taxes were subject to circuit court hearings in February or March of 2014.

28. The Delinquent 2011 property taxes must be paid on or before March 31, 2014, unless a later date was set for a specific parcel by circuit court order. MCL 211.78k(5), (6), (7). State courts are inconsistent with their treatment of property owners on a circuit by circuit based.

29. No later than May 1 next succeeding forfeiture, the county must begin title work for each parcel in order to identify all interest holders entitled to notice for each forfeited parcel of property. MCL 211.78i(1).

30. This is where Defendant Title Check, LLC becomes involved.

31. Over the succeeding months, each identified interest holder is supposedly sent notices describing the parcel, the date of forfeiture, the

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

circuit court case number, an explanation that the person may lose their entire interest in the property if the taxes remain unpaid, the amount required to redeem, the date and time and location for the administrative show cause and circuit court hearings, and other relevant information—including how to object to the foreclosure. MCL 211.78i(7).

32. Under contracts executed between Title Check and the contracting counties, Title Check handles the work the counties are supposed to do.

33. Defendant Title Check, LLC is paid for those services.

34. As an example, the State of Michigan (who handles the foreclosure for eight of Michigan's 83 counties) pays Defendant Title Check, LLC a million dollars a year for such services. **Exhibit C**.

35. In the only contract to become public between Defendant Title Check, LLC and the County of Muskegon, Defendant Title Check, LLC charges each parcel at least $139 per parcel for these services. **Exhibit D**.

36. However, that is not how Defendant Title Check, LLC makes the bulk of its monies.

37. As of April 1, 2014, a now example former interest holder's right, title, and interest in any unredeemed parcels is extinguished except as provided by statute or as separately addressed by circuit court order or by appellate court order. MCL 211.78k.

38. As the State of Michigan explains, Michigan law requires that these parcels be auctioned off and be offered at a minimum bid, which must include "all the outstanding taxes, interest, penalties, and fees" *plus* "the proportional costs of preparing for and conducting the auction sale." MCL 211.78m(16)(a).

39. Defendant Title Check, LLC creates an "auction book" which lists the "starting bid prices" which are treated as the "minimum bid" required by MCL 211.78m(16)(a).

40. Prospective buyers then bid on the properties and reach a particular sale price.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

41. Undoubtedly making it even more popular with county treasurers, Defendant Title Check, LLC does not charge any amount of money to preparing for and conduct the auction sale.

42. Defendant Title Check, LLC holds the auctions both on the internet (using interstate wires) and in various private physical locations throughout the State of Michigan.

43. At these auctions, Defendant Title Check, LLC, without any statutory authorization and in fact contrary to the express terms of the *General Property Tax Act*, decrees to prospective buyers that they must directly pay Defendant Title Check, LLC an additional "buyer's premium" in the amount of 10% of the sale price as a condition of the sale. See **Exhibit E, § 4** (At the sale, the buyer must pay "the full purchase price consists of the final bid price plus a buyer's premium of 10% of the bid price, any outstanding taxes due on the property including associated fees and penalties, and a $30.00 deed recording fee" in addition to additional fees if a credit card is used.)

44. The *General Property Tax Act* does not authorize Defendant Title Check, LLC or any county treasurer to charge or add "a buyer's premium of 10% of the bid price."

45. Instead, the proportional cost of the sale must be already included in the minimum price set *prior to* the start of the auction.

46. Moreover, charging "a buyer's premium of 10% of the bid price" is not a valid means of passing on the "proportional costs of preparing for and conducting the auction sale" to buyers.

47. The demand and requirement is transmitted inter alia to buyers and effectuated in part via Defendant Title Check, LLC's website (https://www.tax-sale.info/forms/Standard-Rules.pdf) by use of interstate wires.

### *Plaintiff Ruben Garcia Jr.*

48. Plaintiff RUBEN GARCIA JR. was a bidder and buyer at the August 8, 2018 forfeiture tax sale held at the Doubletree Hotel Bay City Riverfront located at 1 Wenonah Park Place in Bay City Michigan.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

6

49. Plaintiff RUBEN GARCIA JR. was told and reminded of the disputed "buyer's premium of 10% of the bid price" while at the action on August 8, 2018 by representatives of Defendant Title Check, LLC

50. At the auction, Defendant Title Check, LLC acted as an auctioneer on behalf of the Bay and Tuscola County Treasurers selling numerous parcels of property, including the property located at 309 9th St, Bay City, Michigan.

51. Without authorization or legal authority under Michigan law, Defendant Title Check, LLC added the same standard provisions as outlined above, to wit: charging "a buyer's premium of 10% of the bid price" which is not the proportional costs of preparing for and conducting the auction sale to buyers.

52. Plaintiff RUBEN GARCIA JR. was the successful bidder of a property located at 309 9th St, Bay City, Michigan in the amount of $11,500.

53. As a condition of being entitled to receive that benefit of the successful bid to purchase the 309 9th Street property, Plaintiff RUBEN GARCIA JR. was not charged a proportional or prorated cost of preparing for and conducting the auction sale but instead charged a flat excessive fee of an additional $1,150.

54. By operation of law, the minimum bid included (or should have included) a proportional or prorated cost of preparing for and conducting the auction sale within the minimum sale price.

55. On information and belief, the total cost of the auction was far less than the amount collected at the same by Defendant Title Check, LLC.

56. At the same auction, for example, the successful bidder of 1425 S Cemetery Rd in Deford, Michigan (being Lot No. 6534) paid $101,250 and was charged an illegal fee of $10,125.00 (or nearly ten-times the amount of the fee charged to Plaintiff Garcia) which was not prorated as required by the *General Property Tax Act*. See **Exhibit G**.

57. At the same auction, for another example, the successful bidder of property on Muirhead Drive in Bay City, Michigan (being Lot No. 810) paid merely $950 and was charged an illegal fee of $95 (or nearly one-tenth of the amount of the fee charged to Plaintiff Garcia) which was not prorated as required by the *General Property Tax Act*.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

7

## CLASS ALLEGATIONS

58. This action is brought by Plaintiff RUBEN GARCIA JR individually and on behalf of all buyers from each auction undertaken by Defendant Title Check, LLC on behalf of any Michigan county treasurer during the relevant statutorily-limited time period who were subject to a buyer's premium of ten percent (10%) of the bid price imposed by Defendant Title Check, LLC which was not the proportional costs of preparing for and conducting the auction sale.

59. The proposed class consists of all buyers from each auction undertaken by Defendant Title Check, LLC on behalf of any Michigan county treasurer, during the relevant statutorily-limited time period, who were subject to a buyer's premium of ten percent (10%) imposed by Defendant Title Check, LLC atop of the successful and accepted auction sale, which resulted in disproportional costs being imposed for the preparing for and conducting of the auction sale.

60. The number of injured individuals who have been injured is sufficiently numerous to make class action status the most practical method to secure redress for injuries sustained and class wide equitable relief.

61. There are clear questions fact raised by the named Plaintiff's claims common to, and typical of, those raised by the Class he seeks to represent, including—

   a. What is the proportional or prorated cost of preparing for and conducting the auction sale;

   b. Whether the proportional or prorated cost of preparing for and conducting the auction sale was included in the minimum bid; and

62. There are clear questions of law raised by the named Plaintiff's claims common to, and typical of, those raised by the Class they seek to represent, including—

   a. Whether Defendant Title Check, LLC committed extortion numerous times in each auction under the *Hobbs Act* as a predicate to violation under Section 1962(c) of the *Racketeer Influenced and Corrupt Organizations Act*;

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

b. Whether the association in fact between Defendant Title Check, LLC and the contracted county treasurers was an unlawful enterprise under the *Racketeer Influenced and Corrupt Organizations Act*; and

c. Whether Defendant Title Check, LLC has been unjustly enrichment by demanding, charging, and obtaining a buyer's premium of 10% of the bid price which was not the proportional costs of preparing for and conducting the auction sale to buyers (or included with the minimum bid) or authorized by the *General Property Tax Act*.

63. The violations of state and federal laws and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members.

64. Plaintiff, as Class representative, will fairly and adequately protect the interests of the Class members and will vigorously prosecute the suit on behalf of the Class; and is represented by sufficiently experienced counsel.

65. The maintenance of the action as a class action will be superior to other available methods of adjudication and will promote the convenient administration of justice, preventing possible inconsistent or varying adjudications with respect to individual members of the Class and/or one or more of the Defendants.

## COUNT I
## VIOLATION OF THE RICO ACT
### *RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT*
### (AGAINST DEFENDANT TITLE CHECK, LLC)

66. The prior allegations are alleged word for word in this Count.

67. Section 1962(c) of the *Racketeer Influenced and Corrupt Organizations Act* makes it "unlawful for any person employed by or associated with any enterprise to conduct such enterprise's affairs through a pattern of racketeering activity.

68. Defendant Title Check, LLC is a person under the *Racketeer Influenced and Corrupt Organizations Act* as an entity capable of holding a legal or beneficial interest in property (i.e. buyer's money).

69. The enterprise is the association in fact consisting of county treasurer of each contracting county and Defendant Title Check, LLC acting in furtherance of completing forfeiture auctions which unlawfully charges a non-proportional or non-prorated cost of preparing for and conducting the auction sale instead charged a flat excessive fee which collectively captures amounts, at each auction, which exceed the cost of preparing for and conducting the auction sale.

70. Two types of racketeering activity (the predicates) were undertaken by Defendant Title Check, LLC in furtherance of the enterprise: extortion and/or wire fraud.

   a. Extortion was committed by Defendant Title Check, LLC by obtaining the property (money) from another (the buyers), with consent, under color of official right in violation of the *Hobbs Act* by having rules of the auction and imposing the rules of the auction which charged "a buyer's premium of 10% of the bid price" in consisting of the "proportional costs of preparing for and conducting the auction sale" to buyers, including Plaintiff Garcia. See 18 U.S.C. § 1951.

   b. Wire fraud was committed by Defendant Title Check, LLC a scheme to defraud buyers in the form of excessive and unlawful fees not authorized to be demanded or seized by law and did so via the use of wires in furtherance of the scheme by having rule of auctions and imposing the rules of the auction which charged a buyer's premium of 10% of the bid price which was not the proportional costs of preparing for and conducting the auction sale to buyers, including Plaintiff Garcia.

71. Each demand for and receipt of the buyer's premium of 10% of the bid price is a separate predicated racketeering act and constitute literally thousands (if not tens of thousands) of actions on intra-year and inter-year basis to show continuity of activity.

72. The date and location of the racketeering activity violations suffered by every class member is listed within Defendant Title Check, LLC's auction catalog, copies of which are posted on Defendant Title Check, LLC's website, *www.tax-sale.info*.

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

73. At minimum, the website, *www.tax-sale.info*, operated by Defendant Title Check, LLC, which also demands and announces the buyer's premium of 10% of the bid price, is registered with GoDaddy.com, LLC whose servers and web services which operate the website involved with the auction process are located outside the State of Michigan as part of interstate commerce and the wires of interstate commerce. **Exhibit J.**

74. By formal agreements (like the type attached) between participating county treasurers and Defendant Title Check, LLC (which are in the possession of Title Check, LLC), Defendant Title Check, LLC has agreed to form and associated itself with a RICO enterprise and did, in fact, commit thousands of predicate acts in furtherance of a pattern of racketeering activity in connection with said enterprise when extracting "a buyer's premium of 10% of the bid price" not consisting of the "proportional costs of preparing for and conducting the auction sale" to buyers, including Plaintiff.

75. On information and belief, the original and/or true copies of the formal agreements are within the custody and control of Defendant Title Check, LLC.

76. Plaintiff pleads violations of 18 U.S.C. § 1951 and 18 U.S.C. § 1343, which is are separate forms of "racketeering activity" as that term is defined in 18 U.S.C. § 1961(1).

77. The conduct of Defendant Title Check, LLC in demanding, charging, and obtaining a buyer's premium of 10% of the bid price which was not the proportional costs of preparing for and conducting the auction sale to buyers (or included with the minimum bid), in joint enterprise with and between certain county treasurers and Defendant Title Check, LLC, was a racketeering activity, as outlined above, through highly repeated actions (i.e. by each auctioned property) which results in the obtainment of property being far excess of what is entitled to be obtained by the auction sales

## COUNT II
## UNJUST ENRICHMENT / RESTITUTION / DISGORGEMENT
### (AGAINST DEFENDANT TITLE CHECK, LLC)

78. The prior allegations are alleged word for word in this Count.

79. By receiving improper premium of ten percent (10%) above the bid price which was not the proportional costs of preparing for and

OUTSIDE LEGAL COUNSEL PLC
www.olcplc.com

conducting the auction sale to buyers, Defendant Title Check, LLC is in receipt of funds from Plaintiff and Class members not entitled to be received, held, enjoyed, and kept by Defendant Title Check, LLC.

80. By receiving improper premium of 10% of the bid price which was not the proportional costs of preparing for and conducting the auction sale to buyers, an inequity results to Plaintiff and the members of Class because of the retention of the benefit by Defendant Title Check, LLC.

81. Outside any "cost" included within the minimum bid, no fee or costs may be charged to a buyer.

82. When auctioning foreclosed parcels, Michigan law, MCL 211.78m, directs the required minimum bid required to be imposed is "all delinquent taxes, interest, penalties, and fees" due on each foreclosed parcel *plus* "expenses of administering the sale, including all preparations for the sale."

83. The auction system developed and applied by Defendant Title Check, LLC, together with the participating county treasurers, results in an outcome which allows these parties to extract and receive monies in excess of what is allowed by statute, MCL 211.78m.

84. When a statute providing rights does not provide a private cause of action for monetary damages, a party can seek to enforce the statute by seeking injunctive relief. *Lash v Traverse City*, 479 Mich 180, 196; 735 NW2d 628 (2007); see also *Mich Ass'n of Home Builders v City of Troy*, 504 Mich 204, 225; 934 NW2d 713 (2019) (affirming *Lash*).

85. This Court is requested to enter an order commanding the return of all buyer's premium obtained and extracted by Defendant Title Check, LLC in excess of the minimum bid which included the expenses of administering the sale, including all preparations for the sale.

## JURY DEMAND

86. Plaintiff RUBEN GARCIA, JR requests jury demand for all triable issues.

## RELIEF REQUESTED

87. WHEREFORE, Plaintiff RUBEN GARCIA, JR respectfully requests this Court to—

    a.    Assume jurisdiction on this matter;

    b.    Certify this matter as a class action;

    c.    Enter an individual and/or class-based judgment in the amount of losses suffered as a result of the activities outlined above in violation of the *Racketeer Influenced and Corrupt Organizations Act;*

    d.    Award treble and/or punitive damages under the *Racketeer Influenced and Corrupt Organizations Act*;

    e.    Enter an injunctive order commanding the return of ill-gotten gains under the theories of unjust enrichment, disgorgement, and/or restitution*;*

    f.    Award and permit attorney fees and costs pursuant to the *Racketeer Influenced and Corrupt Organizations Act*, FRCP 23, and any other rules or process provide by law; and

    g.    Award such other relief as warranted by this case.

Date: August 4, 2020

| | |
|---|---|
| /s/ Philip L. Ellison | /s/ Matthew E. Gronda |
| OUTSIDE LEGAL COUNSEL PLC | MATTHEW E. GRONDA (P73693) |
| PHILIP L. ELLISON (P74117) | Counsel for Plaintiff |
| Counsel for Plaintiff | PO Box 70 |
| PO Box 107 | St. Charles, MI 48655 |
| Hemlock, MI 48626 | (989) 249-0350 |
| (989) 642-0055 | matt@matthewgronda.com |
| pellison@olcplc.com | |

OUTSIDE LEGAL COUNSEL PLC  www.olcplc.com